LEVEY, FILLER, RODRIGUEZ, KELSO & DEBIANCHI, LLP
Attorneys for Plaintiff
41-26 27th Street, Suite 3D
Long Island City, NY 11101
TEL (718) 340-3614

/s/ David F. Filler (DF-6850)


UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------
                                                           )
PARK AVENUE CONSULTING GROUP INC.,) Returnable _____2008
                                                           ) 10:00 a. m.   Room 21B
             Plaintiff,                                    )
                                                           ) Civil Action No.08 Civ. 1850 (CM) (GWG)
             v.                                            )
                                                           ) NOTICE OF MOTION
NEWGOLD INC. and FIRSTGOLD CORP.       )
             Defendants,                                   )
-------------------------------------------------------------

To:   BLAIR & ROACH, LLP
      Attorneys for Defendants
       2645 Sheridan Drive
      Tonawanda, New York 14150

PLEASE TAKE NOTICE that Plaintiff Park Avenue Consulting Group Inc. by its undersigned attorney, pursuant to Federal Rule of Civil Procedure Rule  12(b)(6)  and ¶ 2.D., Individual Practices of Judge McMahon, revised 2/3/2006, and New York's CPLR § 214.2; and based on the accompanying affirmation of David Filler and the Memorandum of Law, will bring a motion on for hearing before this Court at Room 21B, United States Court House, 500 Pearl Street, City of New York with no designated return date.   In accordance with said Rule 2.D., answering papers or motions are to be served within two weeks of the receipt date of this Notice of Motion and filed promptly thereafter.

1

The relief sought is to Dismiss the Counterclaim. The grounds for the relief sought are set forth in the accompanying Memorandum of Law.

June 18, 2008

                                                LEVEY, FILLER, RODRIGUEZ,
KELSO & DEBIANCHI, LLP
Attorneys for Plaintiff
41-26 27th Street, Suite 3D
Long Island City, NY 11101
TEL (718) 340-3614
FAX (718) 340-3615
Email Dfiller@dlz.mailstreet.com

By:

*[signature]*

David F. Filler (Bar No. DF- 6850)

Courtesy Copy Sent by FED EX to:

Hon. Colleen McMahon,
U. S. District Court Judge
U. S. District Court
Southern District of New York
500 Pearl Street, 21-B
New York, NY 10007-1312

LEVEY, FILLER, RODRIGUEZ, KELSO & DEBIANCHI, LLP
Attorneys for Plaintiff
41-26 27th Street, Suite 3D
Long Island City, NY 11101
TEL (718) 340-3614
/s/ David F. Filler (DF-6850)

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------
                                                      )
PARK AVENUE CONSULTING GROUP INC., ) Returnable _____2008
                                                      ) 10:00 a. m.   Room 21B
            Plaintiff,                              )
                                                      ) Civil Action No.08 Civ. 1850 (CM) (GWG)
            v.                                      )
                                                      ) DECLARATION IN SUPPORT
NEWGOLD INC. and FIRSTGOLD CORP.    )
            Defendants,                         )
-------------------------------------------------------------

      DAVID F. FILLER, an attorney duly admitted to appear before this Court, in support of the Notice of Motion by Plaintiff Park Avenue Consulting Group, Inc., duly declares under the penalties of perjury that:

    1.    The exhibits annexed hereto are true copies of the originals

        Ex. "1" Retainer Agreement and Addendum between the parties

    2.    The purpose of this affirmation is to authenticate the exhibits.

    3.    All of Plaintiff's grounds for relief under the Notice of Motion are set forth in the accompanying Memorandum of Law.

    4.    The relief sought by the motion is set forth in the accompanying Memo of Law and Notice of Motion.

June 18, 2008

          LEVEY, FILLER, RODRIGUEZ,
          KELSO & DEBIANCHI, LLP
          Attorneys for Plaintiff
          41-26 27th Street, Suite 3D
          Long Island City, NY 11101
          TEL (718) 340-3614
          Email Dfiller@dlz.mailstreet.com
          FAX (718) 340-3615

          By,

          *[signature]*

          David F. Filler (Bar No. DF- 6850)

Courtesy Copy Sent by FED EX to:

Hon. Colleen McMahon,
U. S. District Court Judge
U. S. District Court
Southern District of New York
500 Pearl Street, 21-B
New York, NY 10007-1312

LEVEY, FILLER, RODRIGUEZ, KELSO & DEBIANCHI, LLP
Attorneys for Plaintiff
41-26 27th Street, Suite 3D
Long Island City, NY 11101
TEL (718) 340-3614

/s/ David F. Filler (DF-6850)

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------
PARK AVENUE CONSULTING GROUP INC.   )
                                     )
          Plaintiff,                 )
                                     ) Civil Action No.08 Civ. 1850 (CM) (GWG)
          v.                         )
                                     )
NEWGOLD INC. and FIRSTGOLD CORP.    )
          Defendants,                )
---------------------------------------------------------------

MEMORANDUM OF LAW
IN SUPPORT OF PLAINTIFF'S MOTION TO DISMISS THE COUNTERCLAIM

        Respectfully submitted by:
        LEVEY, FILLER, RODRIGUEZ, KELSO &
        DE BIANCHI, LLP

        By: /s/_____
            David F. Filler

To: BLAIR & ROACH, LLP
Attorneys for Defendants
2645 Sheridan Drive
Tonawanda, NY 14150
(716) 834-9181

Courtesy Copy Sent by FED EX to:
Hon. Colleen McMahon,
U. S. District Court Judge
Southern District of New York
500 Pearl Street, 21-B
New York, NY 10007-1312

1

# TABLE OF CONTENTS

|  |  | Page |
|---|---|---|
| **TABLE OF AUTHORITIES** | | 1 |
| I | OVERVIEW | 2 |
| II. | ARGUMENT | 2 |
| III. | CONCLUSION | 4 |

# TABLE OF AUTHORITIES

Page

**Federal Statutes**

Fed. R. Civ. P. 12(b)(6)    3

**Federal Caselaw**

Rosenblatt v. Christie
195 Fed.Appx. 11, 13, 2006 WL 2520659, 2 (2nd Cir. 2006)    3

**New York Statutes**

CPLR § 214.2    3, 4

### I.  Overview

Plaintiff Park Avenue Consulting Group Inc. ("PACG") moves under Fed. R. Civ. P. 12(b)(6) for dismissal of the Counterclaim on statute of limitation grounds and in support states:

### II.  Argument

**The Counterclaim is barred by the 6 year statute of limitations; CPLR § 214.2.**

The Counterclaim in its ¶ 22. States that that Plaintiff *"…failed to perform services for Newgold as described in ¶ 3. of the Agreement.'* The Agreement and its Addendum are annexed to the Filler aff. as Ex. "1."

The term of the agreement expired on December 31, 2000.  As the Counterclaim was asserted in response to the Complaint filed in late November 2007 any damages that may have accrued when the agreement was in effect are now barred by New York's 6 year statute of limitations. CPLR § 214. 2.

> Finally, the district court correctly concluded that the statute of limitations barred plaintiff's claims regarding the 1992-1996 sales since plaintiff did not commence the present action until 2004. *See* N.Y. CPLR § 213(2) (**stating that an action upon a contractual obligation or liability must be commenced within six years);** *see also ABB Indus. Sys., Inc. v. Prime Tech., Inc.,* 120 F.3d 351, 360 (2d Cir.1997) ("[I]n New York it is well settled that the statute of limitation for breach of contract **begins to run from the day the contract was breached**, not from the day the breach was discovered, or should have been discovered."); *see also T & N PLC v. Fred S. James & Co. of New York,* 29 F.3d 57, 60 (2d Cir.1994) (stating that "neither knowledge of the breach nor cognizable damages are required to start the statute of limitations running at breach.").

Rosenblatt v. Christie 195 Fed.Appx. 11, 13, 2006 WL 2520659, 2 (2nd Cir. 2006)

Thus as the GOLD's counterclaim is beyond the statute of limitations, the GOLDs have failed to state a claim upon which relief can be granted.  Fed. R. Civ. P.  12(b)(6).

While it is true, however, that an Addendum was entered into that extended the term until December 31, 2001; and also that the instant Complaint was filed at the end of November 2007;

the only damages that could possibly be alleged within the statutory limitation period would be those accruing during the last month of the Addendum in December 2001. The Counterclaim fails to allege any damages during this period of time.

### IV. Conclusion

WHEREFORE, Plaintiff respectfully seeks an Order dismissing the Counterclaim for failure to comply with New York's limitations statute, <u>CPLR</u> § 214.2. PACG seeks such other and further relief as this Court deems just.

June 18, 2008

           LEVEY, FILLER, RODRIGUEZ, KELSO &
           DE BIANCHI, LLP
           Attorneys for Plaintiff
           41-26 27TH Street, Suite 3D
           Long Island City, NY 11101-3825
           TEL (718) 340-3614

           By: /s/_____
           David F. Filler (DF-6850)

# RETAINER AGREEMENT

BETWEEN:

**PARK AVENUE CONSULTING GROUP, Inc.**
80 Fifth Avenue, Suite 1201; New York, NY 10011
(hereinafter called the "**Consultant**")

- AND -

<u>**NewGold, Inc.**
500 Nolen Drive, Southlake, TX 76092</u>
(hereinafter called the " **Company**")

**THIS AGREEMENT**, upon acceptance of its terms by the Company, will formalize a relationship between the Consultant and the Company effective on <u>September 1, 2000</u>. In consideration of mutual covenants contained herein, the Company and Consultant agree as follows:

**WHEREAS,** Consultant marketing services designed to heighten the brand identity of the business conducted; and

**WHEREAS,** NewGold, Inc. (NGLD), is a public company that is at this time trading common stock through the NASDAQ stock market; and

**WHEREAS,** Company desires to retain the services of the Consultant in a consultation capacity to inform on financial public relations methodology designed to increase awareness of the company within the investment community all public information released by the company by press release or SEC filing; to expose the company to a broad network of active retail brokers, financial analysts, institutional fund managers, private investors and active financial newsletter writers; create, build and continually enhance a fax database of all brokers, investors, analysts and media contacts who have expressed an interest in receiving on-going information on the company; email press releases, corporate announcements, broker updates, companny news developments to ParkCap's email database of brokers, institutional fund managers, financial analysts and industry professionals; strive to obtain company analyst coverage and /or investment banking sponsorship; introduce the company to various fund managers and institutional investors.**WHEREAS,** Company wishes to formalize in a written agreement the terms and conditions under which Consultant will provide such services to Company.

**NOW THEREFORE,** for the mutual promises and other considerations described herein, the parties agree as follows:

1. **APPOINTMENT.**

   The Company hereby engages Consultant and Consultant agrees to render services to the Company as a consultant upon the terms and conditions hereinafter set forth.

2. **TERM.**

   The term of this Retainer Agreement began as of the date of this Agreement, and shall terminate <u>12 (twelve)</u> months from that date, unless earlier terminated in accordance with

paragraph 7 herein or extended as agreed to between parties. However, at the end of the first 3 (three) months, the parties will review their relationship and if for any reason whatsoever either party elects to terminate this Agreement, and upon written notice by either party to the other, the Retainer Agreement will terminate with such receipt.

3. **SERVICES.**

During the term of this Agreement, Consultant shall use commercially reasonable efforts to provide advice to, undertake for and consult with the Company concerning the implementation of a financial public relations program for the Company with respect to public information released by press release or SEC filing by the Company. Consultant is not a registered Broker-Dealer and will not need to register as a Broker-Dealer to perform services and does not effectuate stock trades. Consultant shall conduct their activities in accordance with the rules and regulations governing all aspects of the services to be performed under this Agreement, and the long-standing practices of the industry.

4. **DUTIES OF THE COMPANY.**

The Company shall provide Consultant, on a regular and timely basis, with all approved data and information about it, its subsidiaries, its management, its products and services and its operations as shall be reasonably requested by Consultant, and shall advise Consultant of any facts which would affect the accuracy of any data and information previously supplied pursuant to this paragraph. The Company shall promptly supply Consultant with full and complete copies of all financial reports, all filings with all federal and state securities agencies; with full and complete copies of all stockholder reports; and with all brochures or other sales materials relating to its products or services. The Company shall provide Consultant with any publicly released news that may be of material change to the Company in a timely fashion. The Company agrees that it will provide public information to consultant at the time of its availability.
Company shall be fully responsible to assure all Company information is accurate and complete. Company understands and acknowledges that Consultant can not guarantee that the services provided hereunder will achieve any particular objective or fulfill any specified goals.

5. **COMPENSATION.**

a) The Company agrees to issue to Consultant 600,000 (six hundred thousand) warrants exercisable for five (5) years from the date of issuance, the first 300,000 (three-hundred thousand) to be exercisable at $0.50 and issued upon execution of this Agreement, the next 100,000 (one-hundred thousand) to be exercisable at $2.00 and issued six months from the date of this Agreement, the next 100,000 (one-hundred thousand) to be exercisable at $3.00 and issued nine months from the date of this Agreement, the next 100,000 (one-hundred thousand) to be exercisable at $4.00 and issued twelve months from the date of this Agreement. Company's counsel shall be responsible for providing an opinion letter for any 144 shares and such opinion letter shall not be unreasonably withheld. The number of shares and exercise price of the Warrants shall be adjustable for stock splits. In the event the Warrants are not delivered by September 7, 2000 Consultant shall have the right to terminate this Agreement on two-days faxed notice. The Company also agrees to issue Consult 50,000 (fifty thousand) restricted 144 Shares of the Company's stock upon execution of this Agreement. Consultant shall provide Company with DTC instructions. In the event of termination by the Company, consultant is entitled to the pro-rata amount of

warrants and payment of monthly cash compensation to the end of the month of termination.

b) The Company shall pay Consultant a monthly retainer fee of $10,000 (ten thousand). In the event the Company pays consultant in the form of common stock, the Company warrants and represents that the shares of stock are either registered and/or exempt from registration by providing an opinion of counsel that the stock is unrestricted. Company agrees to transfer the pro rata common stock for the first month's retainer to an account acceptable to Consultant bySeptember 7, 2000. The Company will pay all reasonable expenses related to the consultation of the Company. Invoices to be provided on a monthly basis to be paid in the following month along with the agreed upon retainer fee. Individual expenses in excess of $2,500.00 (two thousand five hundred) require Company's prior approval. If monthly expenses exceed $2,500.00, Consultant will inform Company and will receive prior approval for all expenses incurred after that. Company will also be responsible for travel expenses incurred on behalf of Company.

c) The Company shall furnish Consultant with a reasonable supply of folders and company literature, as needed.

6. **REPRESENTATION AND INDEMNIFICATION.**

The Company shall be deemed to make a continuing representation as to the accuracy of any and all facts, material information and data which it supplies to Consultant and acknowledge its awareness that Consultant will rely on such continuing representation in disseminating such information and otherwise performing its advisory functions. Consultant shall have no liability to any indirect, incidental or consequential damages suffered by Company as a result of any failure on the part of Consultant in the performance of their duties hereunder. Consultant, in the absence of notice in writing from the Company, will rely on the continuing accuracy of material, information and data supplied by the Company. The Company hereby agrees to indemnify and hold the Consultant and its affiliates harmless from and against any and all liabilities, obligations, losses, damages, actions, and claims of any kind or nature whatsoever arising from the performance of its obligations under this Agreement ("Indemnified Liabilities"), except that the Company shall have no liability hereunder to Consultant with respect to Indemnified Liabilities which arise from (i) representations concerning the Company or its operations made by the Consultant to third parties which are not based on the written material provided by the Company to the Consultant, (ii) the gross negligence or willful misconduct of the Consultant, or (iii) a failure by the Consultant to comply with all applicable laws. The Consultant hereby agrees to indemnify and hold the Company and its affiliates harmless from and against any and all liabilities, obligations, losses, damages, actions, and claims of any kind or nature whatsoever arising from the performance of its obligations under this Agreement .

7. **MISCELLANEOUS.**

a) Termination: This Agreement may be terminated with the mutual consent of both parties, at any time, except as provided in Paragraph 2 hereof. This Agreement may be terminated by either party upon the occurrence of a material breach of this Agreement by the other party. If Consultant commits a material breach of this Agreement then all unexercised warrants at that time will automatically expire. *AS DETERMINED BY A COURT OF LAW.* [handwritten initials]

b)  **Modification:** This Retainer Agreement sets forth the entire understanding of the parties with respect to the subject matter hereof. This Retainer Agreement may be amended only in writing signed by both parties.

c)  **Notices:** Any notices hereunder shall be sent to the Company and the Consultant at their respective addresses set forth. Any notice shall be given by registered or certified mail, postage prepaid, and shall be deemed to have been given when deposited in the United States mail. Either party may designate any other address to which notice shall be given, by giving written notice to the other of such change in address in the manner herein provided.

d)  **Waiver:** Any waiver by either party of a breach of any provision of this Retainer Agreement shall not operate as or be construed to be a waiver of any other breach of that provision or of any breach of any other provision of this Retainer Agreement. The failure of a party to insist upon strict adherence to any term of this Retainer Agreement on one or more occasions will not be considered a waiver or deprive that party of the right thereafter to insist upon adherence to that term of any other term of this Retainer Agreement.

e)  **Relationship of the Parties:** Nothing in this Agreement shall create any partnership or joint venture between the parties hereto, it being understood and agreed that the parties are independent contractors and neither has the authority to bind the other in any way.

f)  **Severabilty:** If any provision of this Retainer Agreement is invalid, illegal or unenforceable, the balance of this Retainer Agreement shall remain in effect, and if any provision is inapplicable to any person or circumstance, it shall nevertheless remain applicable to all other persons and circumstances. This Agreement is governed by the American Arbitration Association and both parties agree to binding arbitration in the event of a dispute, unless a party is seeking injunctive relief.

g)  **Governing law:** This agreement has been made in the State of New York and shall be construed and governed in accordance with the laws thereof without regard to conflict of laws.

h)  **Entire agreement:** This Agreement and the schedules attached hereto contains the entire agreement between the parties, may not be altered or modified, except in writing and signed by the party to be charged thereby and supersedes any and all previous agreements between the parties.

i)  **Proprietary Information:** The Consultant acknowledges and agrees that specified segments of information received from the Company under this agreement are exclusive proprietary information and the same shall not be divulged, published or distributed in any manner or form to any third party without any express right or written consent of their Company.

Upon execution of this Agreement by the Company, a valid and binding agreement shall exist as of the date first above written.

PARK AVENUE CONSULTING GROUP, Inc.  NEWGOLD, INC.
Per:                                 Per:

_____      _____
Jeffrey D. Forster, President & CEO  James Cutburth, President and CEO

## ADDENDUM TO AGREEMENT DATED SEPTEMBER 7TH, 2000

BETWEEN:

**PARK AVENUE CONSULTING GROUP, Inc.**
80 Fifth Avenue, Suite 1201; New York, NY. 10011
(hereinafter called the "**Consultant**")

- AND -

**NEWGOLD, INC.**
**P.O. BOX 1626, SHINGLE SPRINGS, CA. 95682**
(hereinafter called the "**Company**")

**THE WITHIN ADDENDUM, AMENDS THE AGREEMENT AS FOLLOWS**

PARAGRAPH 2 IS AMENDED AS FOLLOWS:

2. **TERM.**

    The Term of this Retainer Agreement is from January 1, 2001 to December 31, 2001.

PARAGRAPH 5 IS AMENDED AS FOLLOWS

5. **COMPENSATION.**

    a) The Company or its agents agrees to issue to Consultant and or its agents <u>1,000,000 (One Million)</u> warrants to purchase 1,000,000 (One Million) shares of the company's common stock to be issued and fully registered with all customary anti-dilution protections within 90 days of this Agreement. The number of shares and exercise price of the warrants shall be adjustable for stock splits. The warrants will be exercisable as follows: 350,000 (Three hundred and fifty thousand) at $.17 (seventeen cents), 250,000 (Two hundred and fifty thousand) at $.50 (fifty cents), 200,000 (Two hundred thousand) at $1.00 (One dollar) and 200,000 (Two Hundred thousand) at $1.25 (One dollar and twenty five cents.) All Warrants will be deemed cashless and exercisable for five (5) years from the date of this agreement. The Company agrees to use its best efforts to register the underlying warrant/shares as stated in paragraph B hereof. The registered rights granted to the Consultant are on a cost free basis. The Company agrees to pay for all costs associated with registration including but not limited to SEC filings, Blue Sky filing fees, and other costs associated with registration.

    b) Consultant agrees that they will not sell any shares in the open market unless the stock is trading at a 20% premium to the average trading price for the previous 3 days. In the event, that the underlying warrant/stock exercised by the holder are not registered for trading by the Company within 90 days from the date hereof, then the Consultant is entitled to 50,000 (Fifty thousand) free trading

shares or the cash equivalent for every month that the underlying warrant/shares are not registered.

c) The Company shall pay Consultant a monthly retainer fee of $5000 (Five thousand dollars) commencing January 1, 2001. Upon March 1, 2001, the Company agrees to pay the Consultant a monthly retainer fee of $10,000 (Ten-thousand dollars.) The Company agrees to wire the Funds to an account acceptable to Consultant by January 1, 2001. The Company will pay all reasonable expenses related to the consultation of the Company.

d) The Company shall furnish Consultant with a reasonable supply of folders and company literature, as needed. The Company will pay all expenses incurred by Consultant on behalf of the Company. Invoices to be provided on a monthly basis to be paid within ten days of receipt. Any monthly expenses in excess of $1,500.00 (one thousand five hundred dollars) require Company's prior approval. Company will also be responsible for approved travel expenses incurred on behalf of Company.

Additional:

Company agrees to reimburse Consultant for all expenses incurred under initial September 1, 2000 Retainer Agreement. The expenses total $32, 335 (Thirty two thousand three hundred and thirty five dollars.) It is understood that these expenses will be paid in full on a successful completion of a Newgold-ASDI definitive merger agreement. These expenses will be settled in conjunction with other former Newgold debts with funds from the next round of financing.

All the provisions of the agreement dated September 7, 2000 remain in full force and effect (attached copy of said agreement is annexed hereto.)

The within addendum has been approved and authorized by the Board of Directors of the Company.

Dated February 8, 2001

Park Avenue Consulting Group, Inc.
Per:

Jeffrey D. Forster, President/CEO

Newgold, Inc.
Per:

A. Scott Dockter, President/CEO

NEW GOLD addendum        Confidential Page 2              3/20/01

